Filed 5/23/25  P. v. Vasquez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B333708 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA448415) |
| v. | |
| SERGIO LESTER VASQUEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed.

Stephen M. Vasil, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Idan Ivri, Lauren N. Guber and Megan Moine, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted Sergio Lester Vasquez of murder. He asserts evidentiary and instructional errors on appeal. Because there was no prejudicial error, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

## I. Facts

On the evening of July 10, 2016, appellant's girlfriend Raquel Martinez (Martinez) drove with appellant, who is a member of the Temple Street gang, around the area of Rampart Boulevard and Beverly Boulevard in Los Angeles—Temple Street gang territory. A group of people stood outside a nearby banquet hall, and this group included members of the rival 18th Street gang. Martinez parked her car down the street from the hall, and appellant got out of the car. He walked toward the group standing outside and yelled, "Puro 18," to elicit a response and identify 18th Street gang members. Someone in the group responded, "18," and another person working in concert with appellant (who police never identified) shot that man dead.

## II. Procedural Background

The People charged appellant with six counts, four of which involved incidents unrelated to this appeal. In connection with the above incident, the People charged appellant with murder (Pen. Code,[1] § 187, subd. (a)) and unlawful firearm activity (§ 29820, subd. (b)). As to the murder, the People further alleged that appellant personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), causing death (*id.*, subd. (d)), personally used a firearm (*id.*, subd. (b)), and that he committed the murder for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)). The People later dropped the gang allegation.

---

[1] Undesignated statutory references are to the Penal Code.

2

A jury convicted appellant of murder, found him not guilty of unlawful firearm activity, and found not true the firearm allegations.

## DISCUSSION

### I.    Admitting the Hearsay Was Harmless Error

A detective who interviewed appellant after the shooting testified at trial about what appellant had told him.[2]  Appellant said that although he was present at the incident and helped identify the rival gang member, it was someone named "Messy" who shot him.  In response to the detective's questioning, appellant stated that Messy had planned the ambush with appellant by call or text message.  Appellant gave the detective his own phone number, but said that he no longer had the phone.  The detective ran a search and found that the number belonged to a bandwidth company, and when he sent a preservation letter to that company, it responded that it rents that number to another company.  When the detective contacted that other company, it informed him that the phone number is used only "to gather responses from an advertisement."  Over defense counsel's hearsay objection, the trial court admitted the detective's testimony about the information he received from the companies regarding the phone number appellant gave.

The People concede, and we agree, that the trial court erred in admitting this testimony.  Appellant urges that this amounted to constitutional error, but we need not decide that, because the error was harmless whether assessed under *Watson* or *Chapman*. (*People v. Watson* (1956) 46 Cal.2d 818; *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705].)  Our

---

[2] Appellant did not testify at his trial.

3

review of the record shows that the error was harmless beyond a reasonable doubt because while the challenged testimony was relevant to show appellant had lied and to raise doubt about his story that someone else had been the shooter, his interview with the detective contained other major inconsistencies, casting doubt on his credibility. For example, he first said he had learned about the shooting on the news, but later admitted he was there and had assisted the shooter in identifying the 18th Street Gang member. More important, though, appellant ultimately *succeeded* in raising a reasonable doubt as to whether he was the actual shooter (the jury found not true the personal firearm use allegations).

## II. Martinez's Appearance in Physical Restraints

The People twice called Martinez (appellant's girlfriend) to testify, and she twice refused to answer questions. The first time, she asserted the Fifth Amendment, and the trial court ordered her to answer the questions. She refused, and the court held her in contempt. Later in the trial, Martinez took the stand again, and again she refused to testify, this time simply stating, "I refuse to answer any questions." The court allowed this to occur in front of the jury, over defense counsel's request that she be questioned outside its presence. The trial court later granted defendant's motion to strike Martinez's testimony, and instructed the jurors that, "[Y]ou cannot consider whatever she said . . . and you cannot use that in your evaluation with regard to her testimony." However, the trial court allowed the People in their closing argument to "comment on the fact that she was before us" and "she was uncooperative."

4

### A. *Appellant forfeited his claim about restraints, and his counsel was not ineffective.*

Appellant argues that the trial court abused its discretion in allowing Martinez to wear jail clothes and restraints when she took the stand in front of the jury. Appellant forfeited this argument by failing to object below. (*In re Avena* (1996) 12 Cal.4th 694, 731; *People v. Walker* (1988) 47 Cal.3d 605, 629; *People v. Taylor* (1982) 31 Cal.3d 488, 495–496.)

Appellant contends that his forfeiture resulted from ineffective assistance of counsel (IAC). We reject this claim because appellant has not shown a reasonable probability of a more favorable outcome had his counsel objected. (*Strickland v. Washington* (1984) 466 U.S. 668, 697 [104 S.Ct. 2052, 80 L.Ed.2d 674] ["a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies"].)[3]

Martinez refused to give any testimony, let alone testimony that might have absolved appellant of his guilt. More to the point, appellant *admitted* his involvement in the killing. On this record, we are unable to discern any possibility, let alone a reasonable probability, that Martinez's attire or physical restraints played a role in the outcome of this case.

---

[3] We need not decide whether, as appellant asserts, Martinez appearing in restraints implicated appellant's constitutional rights because IAC claims are governed by "the *Strickland* 'reasonable probability' standard . . . even when defense counsel's alleged error involves the failure to preserve the defendant's federal constitutional rights." (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1008–1009.)

**B.** *The trial court properly omitted CALCRIM No. 337*[4]

Appellant asserts that the trial court erred in failing "to give the jury a limiting instruction concerning [Martinez's] appearance in physical restraints and jail clothes." Where a witness has been physically restrained in a manner that is visible to the jury, the court has a sua sponte duty to instruct the jury that the restraints should have no bearing on the determination of the defendant's guilt. (*People v. Medina* (1995) 11 Cal.4th 694, 732; *People v. Duran* (1976) 16 Cal.3d 282, 291–292.) If the restraints are not visible to the jury, however, a court need only give the limiting instruction on request. (Bench Notes to CALCRIM No. 337.)

We agree with the People that the record does not show that the jury was able to see Martinez's physical restraints. Although defense counsel speculated that she "think[s] the jury would be able to see" the restraints, and later mentioned them in her closing argument, neither of these statements show the restraints were visible from the jury box. (See *People v. Ervine* (2009) 47 Cal.4th 745, 773 [record did not show the restraints were visible to jury, despite defense counsel's statement " '[y]ou can see' " the restraint, " 'but you have to look' "]; see also *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 155 [rejecting contention that the People must show beyond a reasonable doubt that the jurors *did not* see the restraint].) Because defense counsel made no request for CALCRIM No. 337, the trial court did not err in failing to give it. Even if the omission had been

---

[4] CALCRIM No. 337 instructs the jury not to speculate about the reason a witness is physically restrained, and not to consider that circumstance for any purpose.

6

error, it was harmless. Martinez gave no testimony, so her credibility was never at issue. It is entirely unclear what negative inference might have been drawn from her appearance in restraints, and similarly difficult to conceive of how such inference could have impacted the outcome of this case.

## III. No Cumulative Error

Appellant contends that he suffered prejudice from the cumulative effect of errors, even if any error was alone harmless. " '[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error.' " (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.) We have rejected all of appellant's claims (finding either no error or no prejudice), and we are unable to discern any cumulative prejudice that would warrant reversal of the judgment.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.


                        LUI, P. J.


We concur:


CHAVEZ, J.


RICHARDSON, J.

8